Counsel. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, Samir Dehghassan, Pro Bono Counsel for Appellant Joseph DeMars. This case involves an egregious violation of the Social Security Administration's Treating Physician Rule. The government does not dispute that Mr. DeMars' primary physician, Dr. Williams, made detailed  and was incapable of sedentary work. The government also does not dispute that if those findings were credited, it should lead to instatement of benefits, either at step three of the required analysis or at step five. As this Court said in Rose v. Callaghan and in numerous other cases, a treating physician's views should be rejected only if there is overwhelmingly compelling evidence in the record to do so. The government does not come close here to showing overwhelmingly compelling evidence. Here you have the view of a treating physician that was, in fact, corroborated by numerous other physicians and is corroborated by the treatment notes themselves. There is absolutely nothing in the record to suggest that Mr. DeMars could ambulate effectively. Instead, what the government— I guess what they're relying on is Dr. Williams, the treating physician. His notes that DeMars was only capable of the most sedentary work, reading that they conclude that he was capable of sedentary work. First of all, that would only go to the step five question. It wouldn't go to the step three ambulate effectively question. We read that sentence as actually supporting Mr. DeMars' claim because what Dr. Williams was saying was that he was incapable of performing anything but the most sedentary work. The most sedentary work, colloquially understood, is presumably something that involves no standing whatsoever. But the regulatory definition of sedentary work involves standing or walking for two hours of an eight-hour workday. The regulatory definition doesn't track the colloquial definition. If someone in a treatment note is not making that treatment note for purposes of litigation, if someone in the treatment note says he's incapable of anything but the most sedentary work, I think the best way of reading that is that he is incapable of sedentary work as defined in the regulation. We think that actually supports Mr. DeMars. And yet that's what the ALJ predicated the decision on, that sentence. That's correct, Your Honor. I think it just sort of shows how unbelievably thin the record evidence contradicting Dr. Williams' views were in this case. And if you look to a lot of the cases where this court has instated benefits such as Wagner, such as Belsamo, such as Shaw, the evidence is actually, the sort of contrary evidence is actually much stronger than there is in this record. There's always going to be a few ambiguities in treatment notes when someone treats someone over 10 years and has dozens and dozens and dozens of treatment notes. There'll be ambiguous things you can pick up on. But it's precisely for that reason that this court has required overwhelmingly compelling evidence in the treatment notes or in other documents in order to discard a treating physician. The ALJ has some responsibilities under Estrella v. Berryhill to explain specifically why he is rejecting the treating physician. Do you think that the ALJ met those requirements of Estrella? Absolutely not, Your Honor. I know that's a softball question. Absolutely not, Your Honor. Estrella, I think, Judge Wesley's opinion, Estrella lays the framework out very clearly that if you get to step two of the analysis, what Estrella calls step two. And so we think this is a step one case, and we think Dr. Williams' view is owed controlling weight, and that disposes of this case. But if you get to sort of step two, then the ALJ has responsibility to explain, by explicitly applying the Burgess factors, exactly why he didn't credit Dr. Williams' view. And of course, here, no one disputes that the Burgess factors were not explicitly applied. And under that circumstance, Estrella makes clear that it can only be after this court is assured that the substance of the treating physician rule has not been transgressed, that the ALJ can be affirmed. The problem is that without that, you're left kind of doing the ALJ's work for him or her by going back through the record and seeing what does or does not support relying upon the treating physician's report. And absent that, we're left to have to search the record and do that ourselves. So that's what the point of Estrella was, wasn't it? Absolutely, Your Honor. And this court's cases have long made that point. Rose V. Callahan makes that same point, that as with any administrative law case, one of the purposes of the rule is that a claimant must understand the reasons why his claim is being rejected. And of course, there's no way that Mr. DeMars, I mean, his principal argument is the listing 1.03 wasn't even mentioned by the ALJ at all. So there's really no way that Mr. DeMars could understand why his claim is being rejected. Let me ask a question, if I may, about step three in listing 102. I understood that Mr. DeMars was required to show that his inability to ambulate effectively lasted at least 12 consecutive months. And that primary burden fell on him at the initial step. And what we have here was some silence in the record about there was no affirmative showing that he was unable to ambulate effectively. That is that he had to use both hands to use crutches to get around. And given that he bore the burden initially and there was silence there, why can we find that he had made the showing he needed to at step three as to listing 102? So two important points, Your Honor. Firstly, the affirmative evidence here is, in fact, Dr. DeMars' case from 1264 to 1271, which is the treating physician opinion. And there he says that Mr. DeMars throughout the period couldn't ambulate effectively. It said he needs crutches, cannot sustain ambulation. That's a checkbox questionnaire, but it was also a checkbox questionnaire in Estrella, in Rosa, Balsamo, and Wagner. You know, the way the ALJ proceedings work is they solicit treating physician opinions through checkbox questionnaires. And so that is unequivocal evidence from a treating physician that Mr. DeMars could not And this court's cases say, once you have that treating physician opinion, the question is no longer did substantial evidence support the ALJ's decision? The question is, is that overwhelmingly compelling evidence in the record such as to reject the treating physician opinion? So help me understand whether that means that in checking the box could not ambulate effectively, that means he was saying that he was applying the correct legal definition of effective ambulation at that time as requiring the two assistive devices that disabled both hands. Well, he also specifically says needs crutches. So, you know, and I think that leads me to the sort of second point I wanted to make, though, which is that the regulatory definition does not require the use of two assistive devices. The regulatory definition that states to ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to carry out the activities of daily living. And then it says examples of ineffective ambulation include but are not limited to the use of two crutches. And then finally, I think very importantly, it says the ability to walk independently about one's home without the use of assistive devices does not in and of itself constitute effective ambulation. And what do we have to establish the 12-month period? Well, first of all, we have Dr. Williams' testimony. And so that in and of itself establishes that he needed crutches or that he couldn't effectively ambulate during the periods. The question is, is there anything contemporaneous that contradicts it? And in fact, there's the evidence, and we point this out at footnote nine in our brief, the evidence actually is from the treatment that's actually corroborates it. So there's at least a 12-month period between June 2007 and June 2008, where there are almost a dozen references to using crutches and no references at all to anything other than crutches. And so we think that's very clear evidence. I do want to emphasize that we don't need to show... Your Honor's question suggested there was silence in the record. But the record is not just treatment notes. The record is also Dr. Williams' testimony. So we don't need to show in the treatment notes affirmative evidence of him using crutches. We already have affirmative evidence from Dr. Williams that he couldn't ambulate effectively. And it's the government's burden to show something that is overwhelmingly compelling those to reject that. And it doesn't come close to showing that, as we say, the evidence actually corroborates it. And I think all of that... Thank you, counsel. We'll reserve two minutes for rebuttal. We'll hear from the commissioner. Good morning, Your Honors. Timothy Rizzo for the commissioner. And before I get started, I'd like to offer my office's condolences on the passing of Judge Winter. Thank you. You're welcome. May it please the court. The issue in this case is whether Mr. DeMars was disabled and whether the disability began prior to his DLI on March 31st, 2009. And the evidence in this case did not compel the ALJ to conclude that Mr. DeMars could not ambulate effectively for purposes of listings 1.02 and 1.03. And this generally includes the treatment notes indicating general knee stability and neurovascular integrity, observations of the ability to walk without a medical necessity for crutches, and of course, Dr. Bernstein's assessment that is focused on that period. Counsel, he not just crutches, he used bilateral crutches. That is one under each arm. How could he have ambulated effectively? Well, the ambulation... Effective ambulation has to be for a period of at least 12 consecutive months. You are correct that he did have periods where he needed to ambulate using crutches, but there were other periods where he only used a cane or the... Assisted devices were not mentioned at all. And in fact, if you look to Dr. Williams' February 2009 note, even Dr. Williams indicates that while Mr. DeMars used crutches, he was able to ambulate without them, which is consistent with Dr. Sebersky's March 2009 assessment that Mr. DeMars was able to ambulate without mentioning any device at all. Was it correct that the commissioner... Joined the meeting. I'm sorry. Could you repeat the question, Your Honor? Yes. It seemed to me that the commissioner, that the ALJ was relying on silence in the record as to some periods where it was unclear whether Mr. DeMars was using one or two crutches, and that given the fairly extensive record of observations made by the treating physician during the relevant period, that the ALJ had an obligation to clear up whether he was actually using one or two crutches, if that was going to be a determinative aspect of the decision. And yet he did not... The ALJ did nothing. Is it really fair and consistent with law to read silence as determinative? Well, there are over a thousand pages of medical records in this case, Your Honor. And the duty to recontact treating physicians only applies when there's insufficient evidence, such as when there's obvious gaps in the record, as stated in Rosa. I hear that is not the case. They had a complete record. And the ALJ reasonably interpreted silence as Mr. DeMars not using crutches because Dr. Williams was diligent in noting when Mr. DeMars used crutches and when he used a cane, when he used a knee brace. And so it's reasonable when Dr. Williams has notes where nothing is mentioned at all, that he was not using any assistive device. Okay. Thank you. You're welcome. I don't understand why that is. If it wasn't in some way medically related to what he was doing, why would his failure to mention it establish that he wasn't using the crutches? Well, because he made a note of when he did use crutches. And I think it was important to note what type of assistive device, if any, Mr. DeMars was using. And so when it was not mentioned, it's reasonable to assume he wasn't using any device at all. And this is consistent with other treating sources. Why is that more reasonable than looking at a claimant with two bad knees, one that had three surgeries, that he was, as a matter of course, using an assistive device? Why isn't that more a reasonable assumption? Well, Your Honor, the left knee really didn't come into play in this case until about February 2009. So for most of the period, the left knee was intact and not bothering Mr. DeMars, according to the record. The relevant period here, again, is? Is January 6, 2004 until March 31, 2009. That's when he needed to establish his disability. So the replacement and the troubles with the second knee came later? Yeah, that's correct. There are some indicia of problems in February 2009. But as Mr. DeMars himself testified, that knee did not really become a problem until about 2011. And if you look at Dr. Williams's opinion in 2016, Dr. Williams relies on those problems with the left knee in his assessment. So I think that needs to be noted. What is the strongest medical evidence in the record, in your view, that establishes that Mr. DeMars was able to ambulate effectively during the limited relevant period? Well, I would say that it would be Dr. Williams's February 2009 note that indicates that although he used crutches, he was able to ambulate without them. To me, that suggests that Mr. DeMars' use of crutches was not strictly medically necessary. And there may have been other times when he was using crutches where he did not strictly need them. And there are other notes, especially from Dr. Williams. Is that the same report where he said he was only capable of the most sedentary work? Yes, that is correct. That's the same February 9th report. And I discussed that with opposing counsel a couple of minutes ago. And he argues that that means he was not capable of even the most sedentary work. Do you disagree with that interpretation? Well, I think Dr. Williams was not necessarily referring to the sedentary work as contemplated in the regulations. But it does contradict his later opinion, which is very extreme. The 2016 opinion indicates that Mr. DeMars was continuously dependent on bilateral crutches ever since 2006, which is clearly not supported in this record. It also said that Mr. DeMars had zero ability to sit, zero ability to stand, and zero ability to walk, which is not supported in this record. And the February 2009 assessment indicating that, yes, Mr. DeMars had some capacity for sedentary work contradicts that. And it also is notable that Dr. Williams discussed the effects of Mr. DeMars' skills in training on his ability to work, which suggests that from a purely medical standpoint, he was capable of some range of sedentary work, which is far from absolutely no ability to sit, stand, or walk and utter dependence on crutches. Counsel, when you talk about the reports that are after the statutory period, like 2016, is it a fair assumption, although not part of this case, that Mr. DeMars continued to deteriorate his knees, continued to deteriorate continuously after February 2009? I think that is correct. That is what he testified. He testified that his knees got worse. And it's clear that his left knee became more problematic after the period in question. So you don't deny that he's probably totally disabled now? I mean, that's not for me to say. I mean, the issue in this case, respectfully, is whether he became disabled before his date last insured. I understand. I understand. Continue. Am I correct in understanding that looking at February 2009 as the end of the relevant walk without the crutches, but only capable of the most sedentary type of work, and then in March, Dr. Sebersky says could certainly ambulate and carry his 322 pounds, but had no capacity, work capacity due to pain while sitting. And in March 27th, again, Dr. Williams said difficulty ambulating, but then no assistive devices were noted. Those were all within like a month period, month and a half period, that suggests that he was having difficulty, but it didn't necessarily seem to rule out sedentary work of some kind. Is that right? Yep, that's correct. I mean, there's nothing. One thing that's particularly notable is that obviously sedentary work is mostly seated, and there's no evidence of any difficulty sitting on the part of Mr. DeMars. He never complained of problems sitting. And really that Dr. Sebersky note is the only thing that really mentioned sitting, and it only says it was painful. It's nothing that would preclude sedentary work. And here- The fact that it was painful? Wait just a second. The fact that it was painful doesn't bother you at all? How would you like to be in pain whenever you sat? I'm not sure. I would not like to be in pain when I sat. But the, I mean, the issue for this case is whether the pain has produced disabling limitations, and it was Mr. DeMars' responsibility to show that. I think he was disabled from being a truck driver, right? Yes, well- What do truck drivers do? Well, they sit most of the time, but- No, my dad was a long haul truck driver. That's what they do, they sit. So how is it that he's able to do sedentary work and sit when he's disabled as a truck driver? How is that consistent? Why isn't he, if he, how is he just, why is he not able to be a truck driver then? You don't dispute that. Well, a truck driver is actually technically classified as a light job, because I think generally driving jobs are classified as light. I mean, there is a difference, respectfully, between sitting on a computer and driving a truck. Okay. Thank you, counsel. You're welcome. Counsel, you've reserved two minutes for rebuttal. Turn your mic on, counsel. Sorry. Turn your mic. Thank you, Your Honor. So just a few points, Your Honor. So first of all, on this question of whether silence in the record is something that we can infer an absence of disability from, I encourage the court to look at the analysis in Wagner at pages 861 to 862. The government made the exact argument here about silence being a basis to infer that a treating physician's opinion should be rejected, and this court, and this court rejected that. In fact, even in that case, there were inconsistencies between the treating physician opinion, and this court said that, you know, it specifically said that it noted those inconsistencies only to say that the evidence has to be overwhelmingly compelling in order to reject a treating physician view, and in that case, it accepted the treating physician's views and instated benefits. So I think the evidence here is far more in favor of the claimant than in Wagner, and I think the same remedy is appropriate. Secondly, I do think it's very telling that the best evidence the government can come up with is evidence where, you know, the treatment note itself says that he does use crutches, and, you know, I think that that sort of demonstrates just how thin the record here is. The government sort of implies that the statement that he can ambulate without them suggests that he doesn't need them at all, but, of course, ambulate is different to ambulate effectively. Ambulate without them just suggests that he maybe is capable of walking a little bit without the crutches, but it does not meet the regulatory definition, which is walking a reasonable pace for a city block without assistance, and it certainly doesn't come close to the sort of standards for ambulating effectively there, and the other evidence they point to is Dr. Sibierski's statement. Dr. Sibierski, of course, is a pain specialist, not an orthopedist, but read the rest of the sentence, but he has a great deal of pain, and then Dr. Sibierski also separately finds that he has no work capacity. So even the evidence the government points to, if you look to the rest of the treatment note, there's always other evidence there that just shows that all of these doctors agreed that Mr. DeMars had no work capacity, and the final point I'll make, Your Honor, is this really is a paradigm case where instatement of benefits is warranted rather than a remand. This is a case like Wagner, and sure, Mr. DeMars has terminal cancer. This case has been going on for many years now. If the case is remanded to the agency, it's likely that it will take another several years. This case was filed in 2014, could be a decade before Mr. DeMars, who has three young children, is able to get the benefits he deserves. With a record this one-sided, we really think that the appropriate remedy would be the instatement of benefits. Thank you, counsel. Thank you both. Thank you, Ms. DeMars. We'll reserve this hearing. Thank you.